IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SEPANTA JALALI, | : |
|     Plaintiff, | : Case No. 2:12-CV-00828 |
| v. | : JUDGE ALGENON L. MARBLEY |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | : Magistrate Judge Deavers |
|     Defendant. | : |

## OPINION & ORDER

### I.  INTRODUCTION

This matter comes before the Court on the Parties cross-Motions for Judgment on the Administrative Record (Doc. 18, Doc. 20). Pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Plaintiff Sepanta Jalali claims entitlement to long term disability ("LTD") benefits from the Long Term Disability Plan (the "Plan") established by her employer, Mt. Carmel Health Systems ("Mt. Carmel"), and insured by Defendant Unum Life insurance Company of America. Plaintiff asks this Court for a lump sum reimbursement for benefits not paid, an order directing Defendant to pay Plaintiff a monthly benefit from the date of judgment, interest, attorney's fees, and costs. (Doc. 20). Defendant seeks judgment on the administrative record and confirmation of the administrative decisions. (Doc. 18). For the reasons set forth herein, Plaintiff's Motion is hereby **GRANTED.** Defendant's Motion is **DENIED.**

### II.  BACKGROUND

#### A.  Facts

Plaintiff was employed by Mt. Carmel as a medical resident physician. On November 13, 2008, she became unable to work due to a number of medical conditions described in the

administrative record. She filed for disability benefits, and Defendant approved her application on June 15, 2009. On July 29, 2010 Defendant notified Plaintiff that it would determine whether she met the Plan's definition of long-term disability. Defendant subsequently determined that Plaintiff met its definition of long-term disabled and paid her disability benefits accordingly. In February 2012, Defendant determined that Plaintiff was not entitled to long-term disability benefits because she was no longer disabled from any occupation. Defendant terminated Plaintiff's benefits on the basis of that finding. Plaintiff appealed Defendant's decision. On July 2, 2012 Defendant upheld the termination.

### *1. The Plan*

While employed at Mt. Carmel, Plaintiff was covered by the policy plan governing this litigation. The Plan was underwritten by Defendant and provided benefits equal to the lesser of 60% of monthly earnings or the maximum monthly benefit of $15,000, for a participant who became disabled as defined by the Plan. In relevant part, the Plan defines "disabled" as follows:

> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(Doc. 11-1 at 151). The Plan also explains that for beneficiaries who are disabled and working, monthly disability payments will continue based on various income-based adjustments. (*Id.* at 152-153). The Plan states that disability payments will stop "after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to." (*Id.* at 156). The Plan's Glossary defines "gainful occupation" as "an occupation that is or can be expected to provide you with an income within 12 months of your return to work that exceeds… 60% of your indexed monthly earnings, if you are not working." (*Id.* at 163). In the same

2

section, "part-time basis" is defined as "the ability to work and earn between 20% and 80% of your indexed monthly earnings." (*Id.* at 165).

### 2. *The Medical Records*

Dr. Lewis Seeder is Plaintiff's primary care physician. On June 10, 2011, Dr. Robert Perkins performed an Independent Medical Evaluation under the terms of the Plan, and his remarks accurately summarize Plaintiff's medical history to that point. Additionally, Dr. Perkins noted in his report that "the examination in our office is consistent with previous records." (Doc. 11-14 at 77). Dr. Seeder's notes indicated that Plaintiff was still suffering from continued back and leg pain following two back surgeries, which themselves resulted in "a secondary reduction in physical capacity." (*Id.* at 76). Dr. Seeder believed that a determination of Plaintiff's "tolerance for full-time work activity even in a sedentary physical capacity [as of March 31, 2011] probably requires a functional capacity evaluation." (*Id.*). After reviewing Plaintiff's medical history and the examination results, Dr. Perkins reported that "she is limited more to sedentary type duty. . . . I do think currently she would have problems with a 40-hour workweek; in fact at best initially I could see her working up to 20 hours a week as long as she was able to maintain the sedentary duty that has been recommended by previous physicians." (*Id.* at 77). In summarizing his findings, Dr. Perkins repeated that he thought she could, in time, work 20 hours a week in a sedentary occupation. (*Id.* at 79). On January 26, 2012, Dr. Seeder provided Defendant with an Attending Physician Statement indicating Plaintiff's continued restrictions. (Doc. 11-15 at 128-129). On February 29, 2012, the day Defendant sent Plaintiff's attorney a letter confirming termination of benefits, Defendant called Dr. Seeder's office to ask whether Jalali could work on a part-time basis. An Unum employee spoke with two separate non-physician employees of Dr. Seeder, the second of whom said that Dr. Seeder believed that Jalali could work a maximum of 4-6 hours a day in a sedentary occupation. (Doc. 11-16 at 50).

3

### 3. *Unum's Review of Jalali's Claim*

In the summer of 2009, Plaintiff began teaching classes at Columbus State University for less than five hours a week. (Doc. 20 at 4). On January 2, 2012, Plaintiff informed Defendant that she would not be teaching the following quarter. Defendant then began a review of Plaintiff's eligibility for continued long-term disability benefits under the Plan. On February 27, 2012, an Unum employee spoke with Plaintiff's attorney and communicated Unum's decision to terminate Plaintiff's benefits. (Doc. 11-16 at 41, 43). Defendant's minutes of the phone call indicate that it decided that Plaintiff was no longer entitled to benefits unless she returned to work part-time. (*Id.* at 41). On February 29, 2012, Defendant sent Plaintiff's attorney a letter stating that Plaintiff was not longer eligible for benefits under the Plan because she "has chosen not to work on a part-time basis despite having the capacity to. . . ." (*Id.* at 44).

## III. STANDARD OF REVIEW

District courts review a plan administrator's denial of ERISA benefits *de novo*, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). When such discretion exists, courts review a plan administrator's decision to terminate benefits using the highly deferential arbitrary and capricious standard of review. *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996). "This standard 'is the least demanding form of judicial review of administrative action . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Evans v. UnumProvident Corp.,* 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Workers Dist. Unions 405 & 442,* 64 F.3d 238, 241 (6th Cir. 1995)). This deferential standard, however, is not a simple formality: "the arbitrary and capricious standard . . . does not

4

require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 661 (6th Cir. 2004). Instead, a plan administrator's decision will only be "upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991). This requires the reviewing court to weigh "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2006).

Additionally, an "actual conflict of interest" exists where the entity adjudicating a claim is also responsible for paying benefits. *Killian v. Healthsource Provident Administrators, Inc.,* 152 F.3d 514, 521 (6th Cir. 1998). This conflict does not, in itself, alter the standard of review; rather, it becomes another factor in analyzing whether the plan administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber,* 489 U.S. at 115.

### IV. ANALYSIS

Plaintiff argues that: (1) Defendant has already made a determination that she has a long-term disability; and (2) that she is not able to work in any gainful occupation on a part-time basis. (*See* Doc. 20 at 8-17). Defendant counters that: (1) it has medical evidence that Plaintiff can in fact work in a gainful occupation on a part-time basis; and (2) that she has chosen not to, thereby making her ineligible for continued benefits. (Doc. 18 at 6-8).

Throughout the administrative record and pleadings, Defendant repeats to two pieces of information to support its decision to terminate Plaintiff's benefits. Defendant argues that Dr. Seeder's relayed comments on February 29, 2012, support the reasonable conclusion that Plaintiff is capable of working on a part-time basis. (Doc. 11-16 at 44; Doc. 18 at 4-5). Defendant also maintains that Plaintiff's letter of January 2, 2012, informing the company that she would not teach classes the next quarter, is proof that Plaintiff chose to not work in a gainful

occupation on a part-time basis. (Doc. 11-16 at 41, 44; Doc. 18 at 6-7). In order to determine the reasonableness of Defendant's decision to terminate Plaintiff's benefits, the Court must turn to the terms of the Plan that govern Unum's conduct.

When interpreting ERISA plan provisions, general principles of contract law dictate that the Court construe the provisions according to their plain meaning in an ordinary and popular sense. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998). In applying the "plain meaning" analysis, the Court "must give effect to the unambiguous terms of an ERISA plan." *Id.* (quoting *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir. 1996)); *Turner v. Safeco Life Ins. Co.,* 17 F.3d 141, 145 (6th Cir.1994) (Federal law gives effect to "straightforward language in an ERISA-regulated insurance policy."); *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1441 (9th Cir. 1990) ("We will 'not artificially create ambiguity were none exits. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.'").

Because the Plan gives the administrator discretion to determine eligibility, the Court reviews a decision to terminate benefits under the "arbitrary and capricious" standard. *Yeager*, 88 F.3d at 380. As noted above, however, the Plan allows Defendant to terminate LTD benefits only in certain situations after 24 months of payments. The Plan states that disability payments will stop "after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to." (*Id.* at 156). The Plan's Glossary defines "gainful occupation" as "an occupation that is or can be expected to provide you with an income within 12 months of your return to work that exceeds . . . 60% of your indexed monthly earnings, if you are not working." (*Id.* at 163). In the same section, "part-time basis" is defined as "the ability to work and earn between 20% and 80% of your indexed monthly earnings." (*Id.* at 165).

Reading the terms in an ordinary and popular sense, in order to terminate LTD benefits, Defendant must determine that Plaintiff is physically able to work on at least a part-time basis, or the ability to earn between 20% and 80% of indexed monthly earnings. Defendant must also determine that Plaintiff can work in a gainful occupation, which means an occupation in which Plaintiff could earn in excess of 60% of her indexed monthly earnings. To satisfy both prongs of this test, Defendant must be able reasonably to conclude that Plaintiff is physically capable of earning something in excess of 60% of her indexed monthly earnings.

Plaintiff argues that because she can only work in a sedentary occupation, her job of assistant professor is not a gainful occupation as contemplated by the Plan. (Doc. 20 at 8). This job requires more than sedentary capacity, and even if she were to work 20 hours per week, her earnings would not meet the 60% threshold set out in the Plan. (*Id.* at 8, 12-13; Doc. 21 at 3-6). Defendant responds that it "need not identify alternative employment for Plaintiff," and cites precedent from three different federal circuits. (Doc. 22 at 6).

Ordinarily, Defendant would be correct. Because the Plan itself incorporates the term "gainful occupation," however, Defendant cannot terminate Plaintiff's benefits unless it has identified such an occupation. Defendant's interpretation would have the court read the Plan's termination requirement as "when you are able to work in any occupation on a part-time basis." But as an administrator, Defendant lacks discretion to rewrite the Plan. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459-460 (9th Cir. 1996); *Pelchat v. UNUM Life Ins. Co. of Am.*, No. 3:02-CV-7282, 2003 WL 21105075 at *11 (N.D. Ohio Mar. 25, 2003). Although Defendant claims that Plaintiff is physically capable of working 4-6 hours a day in a sedentary occupation, Defendant has not presented any evidence of

7

such an occupation that would meet the plan's definition of gainful occupation that would allow a reasonable conclusion that Plaintiff's LTD benefits should be terminated.

Even admitting, *arguendo*, that there are gainful occupations available to Plaintiff, the Court must still evaluate the medical and other evidence that Defendant used to determine that Plaintiff is physically capable of work. In making this argument, Defendant is under the considerable burden of having already determined that Plaintiff was entitled to LTD benefits. As the discussion above of Dr. Perkins' notes establishes, he and other physicians evaluating Plaintiff generally concluded that 20 hours of work a week might be a goal for Plaintiff to shoot for in the future. (Doc. 11-14 at 79). Defendant, however, has made clear in both the administrative record, as well as the pleadings in this Court, that Dr. Seeder's subsequent determination that Plaintiff could work 4-6 hours a day means that she no longer meets the Plan's definition of disability. (Doc. 11-16 at 44; Doc. 18 at 4-5).

The administrative record is clear that Defendant informed Plaintiff's attorney on February 27, 2012, that the company would terminate Plaintiff's LTD unless she returned to work on a part-time basis. (Doc. 11-16 at 41). On February 29, 2012, Defendant sent the attorney a formal letter laying out the decision to terminate LTD benefits and information supporting the decision. (*Id*. 11-16 at 43). The letter included a reference to Dr. Seeder's Attending Physician's Statement of January 26, 2012, that outlined Plaintiff's physical limitations, and Dr. Seeder's opinion of February 29, 2012, that Plaintiff could work 4-6 hours a day in a sedentary occupation. (*Id*. at 44). Defendant did not mention Dr. Seeder's opinion in its February 27th conversation with Plaintiff's lawyer communicating its decision to terminate LTD benefits. Defendant did not mention Dr. Seeder's opinion because the company had not yet received it: the minutes of Defendant's February 27th phone conversation are captioned "PC

8

w/EEs attny re adverse decision." (*Id*. at 41). Defendant's records clearly indicate that it had taken an adverse decision regarding Plaintiff's LTD benefits at some time before February 27, 2012—at least two days before receiving Dr. Seeder's opinion of Plaintiff's physical capacity. (*See id*. at 49-50). Defendant's use of Dr. Seeder's opinion—never actually stated by him in any of the documents in the record, but simply passed on by an assistant—is a mere *post hoc* rationalization of a decision to terminate Plaintiff's LTD benefits made well before February 29, 2012. As such, Defendant's arguments are entitled to little weight. Because the other medical evidence in the administrative record supports Plaintiff's contention that she is still qualified to receive LTD benefits, the objective record weighs almost entirely in her favor.

The administrative record and pleadings demonstrate that the driving force behind Defendant's reevaluation of Plaintiff's benefits was her decision not to work 5 hours a week as an assistant professor for the winter 2012 quarter. That job, for the reasons set forth above, was not a qualifying gainful occupation. Defendant is unable to point to any others for which Plaintiff is qualified. Because the medical evidence relied on in making the determination to terminate Plaintiff's LTD benefits weighs strongly in her favor, Defendant is unable to prevail.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. 20) is hereby **GRANTED**. Defendant's Motion for Judgment on the Administrative Record (Doc. 18) is **DENIED**. It is **ORDERED** that **JUDGMENT** shall be entered in favor of Plaintiff as to Plaintiff's claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B), including pre-judgment and post-judgment interest, fees and costs, and for continued benefits.

**IT IS SO ORDERED.**

                                                                     /s/ Algenon L. Marbley
                                                                 **ALGENON L. MARBLEY**
                                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: March 24, 2014**